UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW CHAPMAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES FOREST SERVICE,<br><br>　　　　　Defendant. | Case No.  1:22-cv-01531-BAM<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO AMEND<br><br>(Doc. 1) |

Plaintiff Matthew Chapman ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, initiated this action pursuant to the Administrative Procedures Act ("APA") on November 29, 2022. (Doc. 1.) Plaintiff's complaint is currently before the Court for screening.

**I.     Screening Requirement and Standard**

The Court screens complaints brought by persons proceeding *in pro se* and *in forma pauperis*. 28 U.S.C. § 1915(e)(2). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

1

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.     Summary of Plaintiff's Allegations

Plaintiff alleges that his land in Tuolumne County is adjacent to the Stanislaus National Forest and is subject to an easement under the jurisdiction and management of the Defendant United States Forest Service ("USFS"). The easement provides for public access to the National Forest. Plaintiff claims that his home, which is next to the forest access easement, stands to be imminently adversely affected by the actions of the USFS.

According to the complaint, this action:

> challenges United States Forest Service (USFS) Decision Memo determinations relating to special use roadway permits for a commercial recreational development on private land, adjacent to the national forest, application of National Environmental Policy Act (NEPA) with respect thereto, and jurisdictional access matters, pertaining to a Federal-Aid funded state highway, compounded with representations within a land deed that the Federal-Aid highway was built in the wrong place. That representation bolstered with a claim that excess land, had been lawfully transferred back, creating 2 parcels. It has been asserted as a fraudulent claim, that the highway properly exists where it was built, that there was, and is no excess land to transfer, nor deed from the state as claimed; that the 2 parcels subject to development are not lawful parcels, there [sic] deed void, as a matter of law and fact.

(Doc. 1 at pp. 1-2.) Plaintiff alleges that he has partaken of the announced USFS administrative scoping regarding the matter and submitted extensive commentary. He appears to seek review of USFS compliance with NEPA pursuant to the Administrative Procedure Act. (*Id.* at pp. 4-5.)

Plaintiff explains that there are two separate commercial recreational projects that were

proposed for development.  The lands for the projects are divided by "a state Federal-Aid highway."  (*Id.* at p. 6.)  Two parcels south of the highway comprise one project and two parcels north of the highway comprise the second project.  Plaintiff indicates that both projects propose and require secondary access that can only be obtained through use of adjacent National Forest System Land roadways.  The instant action involves the project to the south of the highway, known as Under Canvas.  (*Id.*)

According to Plaintiff, Under Canvas had initially been approved by the local planning agency with a declared mitigated negative declaration pursuant to the California Environmental Quality Act ("CEQA") without the need of a secondary access.  On the day set for approval before the local planning commission, the local planning agency cancelled the presentation and announced a full CEQA Environmental Impact Review ("EIR").  A CEQA EIR process ensured and a CEQA decision of approval resulted, which declared required "USFS road permits as a condition to project approval."  (*Id.* at p. 7.)

Before, during, and after the CEQA decision, Plaintiff requested USFS involvement from Jason Kulken, Stanislaus National Forest Supervisor.  Plaintiff claimed that the USFS must involve itself, that it had jurisdictional control over the roadway proposed for required secondary access, that the project land parcels were the result of an unlawful land division and survey fraud, never having been lawfully zoned, and that any road use permit proposals were beyond the authority of the USFS to grant.  (*Id.*)  The Forest Supervisor answered Plaintiff's concerns and asserted a lack of jurisdiction concerning the matter.

Plaintiff further alleges that the spur access proposed, presumably for the special use roadway permits, derives from a forest access road, but the "roadway" does not exist on the current Motorized Vehicle Use Map.  Plaintiff claims the Stanislaus National Forest has neglected to address occasional use of the spur access.

According to Plaintiff, a USFS administrative scoping period was announced May 25, 2022, concerning the project's required special use roadway permits.  This scoping was to proceed with the USFS exercising jurisdiction, which the Forest Supervisor had previously denied.  Following the scoping announcement, Plaintiff resubmitted previous submittals that had

1   been sent to Mr. Kulken, along with additional submittals.  These submittals appear to have

2   included assertions of fraud, based on allegations that the state highway was designed, planned,

3   and constructed as a Federal-Aid project.  Plaintiff alleges:

> The basis of the fraud rests on a deed processed thru the Office of the County Surveyor.  That deed's legal description represents the Federal-Aid highway, as having been built in the wrong place; and a false claim of 12 acres of excess land having been properly deeded back by the State of California (no deed from the state with its legal description exists)  Those 12 acres of land, by deed description creating 2 parcels.  Those 2 parcels providing for an unlawful land division, those 2 parcels comprise the lands of the Under Canvas development.  The unlawful land division also implicates the lands to the north of the highway and the pending second proposed development.

(*Id.* at p. 12.)  Plaintiff asserts that the fraud and false claims in his administrative submittals have never been considered by their factual and legal merits.  Plaintiff submitted relevant evidence to the Federal Highway Administration and CalTrans.

On September 6, 2022, CalTrans issued a determination declaring no abnormalities in the right of way.  Subsequent contact with CalTrans indicated that the matter concerning the claimed transfer of 2 acres of land was before the CalTrans legal department for resolution.

Six days before the CalTrans determination, the USFS released a Decision Memo on August 30, 2022.  The memo determined to issue the proposed three permits and claimed to Categorically Exclude the action from an environmental assessment ("EA") or an environmental impact statement ("EIS").[1]   Plaintiff claims the "determination [was] made, apparently unaware, or in disregard of the ongoing CalTrans investigation, yet to be released, six days later." (*Id.* at p. 13.)  Plaintiff gave notice to the Stanislaus National Forest, to be relayed to Forest Supervisor Kulken, of the intent to file a civil action and the intent to make a formal criminal complaint pursuant to the Federal Land Policy Management Act.

Plaintiff alleges that despite assertions within the Decision Memo, the determination did not consider all comments of public respondents and avoided consideration of his submittals

---

[1] According to the Decision Memo attached to the complaint, the decision to issue the forest road special use permits was "categorically excluded from documentation in an environmental impact statement (EIS) or an environmental assessment (EA).  The applicable category of actions is identified in agency procedures as 36 CFR 220.6(e)(3) Approval, modification, or continuation of special uses that require less than 20 acres of NFS lands." (Doc. 1 at p. 40.)

4

regarding the regulatory hurdles.  Plaintiff further claims that the CE determination cannot be justified.  Plaintiff also appears to claim that the USFS failed to comply with its NEPA statutory obligations.  (*Id.* at p. 14.)

As best as the Court can determine from the complaint, Plaintiff is alleging claims based on the following assertions:  (1) failure to consider his administrative scoping submittals; (2) the USFS improperly determined that the permits at issue were categorically excluded from an EA and EIS analysis required by NEPA because the project could not be built without the USFS road permits: (3) the USFS' environmental analysis is conclusory; (4) the CalTrans right-of-way determination was never considered by USFS and the Decision Memo was issued despite an ongoing investigation; (5) the USFS acted in violation of its authority under the Federal Land Policy Management Act; and (6) the permit scheme was not properly considered and was an attempt to circumvent an express limitation of the USFS' authority to act.

### III.    Discussion

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20 and fails to state a cognizable claim upon which relief may be granted.  As Plaintiff is proceeding in pro se, the Court will allow Plaintiff an opportunity to amend his complaint to the extent he can do so in good faith.  To assist Plaintiff, the Court provides the relevant pleading and legal standards.

#### A.    Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–557.

///

Plaintiff's complaint is not a short and plain statement of his claims. Plaintiff's narrative is lengthy, disjointed, confusing, and conclusory. It also contains extraneous statements and information, making it difficult to separate the relevant factual allegations from the irrelevant ones. It is not the type of complaint contemplated by Rule 8. *See Murguia v. Langdon*, No. 1:19-cv-00942-DAD-BAM, 2020 WL 3542310, at *12 (E.D. Cal. June 30, 2020) (dismissing complaint with leave to amend where complaint failed to comply with Rule 8 and was "mostly narrative ramblings and storytelling"). If Plaintiff files an amended complaint, it should be a short and plain statement of his claims and must be limited only to those factual allegations related to his claims that identify what happened, when it happened, and who was involved. Fed. R. Civ. P. 8.

## B. Federal Rules of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Here, Plaintiff appears to raise three different claims—that Defendant USFS violated NEPA, that the Federal-Aid highway was built in the wrong place, and that the underlying creation of the land parcels at issue in the Under Canvas project was fraudulent. The latter two claims are distinct in time and do not relate to Plaintiff's primary assertion regarding Defendant USFS' approval of the Forest Road Special Use Permits. The claims at issue here do not arise out of the same transaction or occurrence, or series of transactions and occurrences, and there are

6

no common questions of law or fact underlying the claims. That all of the claims have some connection, however loosely based, on the Under Canvas project is not sufficient to make the claims related. The Court will therefore limit its screening to Plaintiff's assertions of a violation of NEPA.

### C. APA

The APA provides that any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute" is entitled to judicial review so long as the substantive statute expressly provides for judicial review of alleged violations, or the challenged action constitutes a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704; *Heckler v. Chaney*, 470 U.S. 821, 828 (1985); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 882 (1990) ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.' ") (citing 5 U.S.C. § 704); *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 800 (9th Cir. 2013) ("To maintain a cause of action under the APA, a plaintiff must challenge 'agency action' that is 'final.' ") (citing *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61-62 (2004) ).

The APA defines reviewable "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 701(b)(2) (incorporating 5 U.S.C. § 551(13) ); *Wild Fish Conservancy*, 730 F.3d at 800 (citing 5 U.S.C. § 551(13) ). Although the definition is "expansive," federal courts "have long recognized that the term [agency action] is not so all-encompassing as to authorize us to exercise judicial review over everything done by an administrative agency." *Wild Fish Conservancy*, 730 F.3d at 800-801 (citation omitted). To qualify as "final," the action challenged must "mark the consummation of the agency's decisionmaking process" and "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 801, citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and internal quotation marks omitted).

A person is "adversely affected or aggrieved by agency action within the meaning of a

relevant [substantive] statute" (e.g., NEPA) when he personally suffered an injury that "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for [the plaintiff's] complaint." *Kandi v. Langford*, No. CV 17-3617 FMO(JC), 2018 WL 6016974, at *3 (C.D. Cal. May 17, 2018), citing 5 U.S.C. § 702; *Lujan*, 497 U.S. at 883 (citation omitted); and *San Luis & Delta-Mendota Water Authority v. United States*, 672 F.3d 676, 704 (9th Cir. 2012). To determine whether a plaintiff is within the zone of interests of a statute, courts look "to the substantive provisions of the [statute], the alleged violations of which serve as the gravamen of the complaint." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1200 (9th Cir. 2004) (quoting *Bennett*, 520 U.S. at 175). The "zone of interest" test "is not meant to be especially demanding." *Id.* (quoting *Clarke v. Securities Industry Association*, 479 U.S. 388, 399 (1987)). A plaintiff is not entitled to judicial review pursuant to the APA where the interests at stake are only "marginally related to or inconsistent with the purposes implicit in the [substantive] statute...." *Id.* (citations and internal quotation marks omitted).

There is a "strong presumption" that the actions of an administrative agency are subject to judicial review. *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 718 (9th Cir. 2011) (citations omitted). "Nonetheless, the APA does not apply in certain narrow circumstances, such as when the substantive statute expressly precludes review, or the challenged agency action involves a function that has been completely "committed to agency discretion by law." *Kandi*, 2018 WL 6016974, at *4 (citing 5 U.S.C. § 701(a)).

A federal agency's compliance with NEPA is reviewed under the APA. *Earth Island Inst. v. Muldoon*, No. 1:22-cv-00710-AWI-EPG, --- F. Supp. 3d --- , 2022 WL 4388197, at *10 (E.D. Cal. Sept. 22, 2022) (citing 5 U.S.C. § 706(2)(A); *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (en banc). Under the APA, a court may set aside an agency action if the court determines that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (citation omitted). "A decision is arbitrary and capricious only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter

to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Conservation Cong. v. United States Forest Serv.*, 720 F.3d 1048, 1054 (9th Cir. 2013) (citing *Lands Council v. McNair*, 629 F.3d 1070, 1074 (9th Cir. 2010)). "Agency action is valid if the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Id.*

### D.    NEPA

NEPA is the "basic national charter for protection of the environment." *Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1215 (9th Cir. 1998) (quoting 40 C.F.R. § 1500.1(a)), cert. denied, 527 U.S. 1003 (1999). NEPA was enacted in pursuit of two objectives: "First, it places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." *Bering Strait Citizens for Responsible Resource Development v. United States Army Corps of Engineers*, 524 F.3d 938, 947 (9th Cir. 2008) (quoting *Baltimore Gas and Electric Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 97 (1983) ) (internal quotation marks omitted).

NEPA requires federal agencies to perform environmental analysis before taking any "major Federal actions significantly affecting the quality of the human environment." *Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 987 (9th Cir. 2020) (citing 42 U.S.C. § 4332(2)(C)). NEPA "does not mandate particular results," but "imposes only procedural requirements to ensure that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts." *Id.* at 988 (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 23 (2008)). An agency can comply with NEPA in three ways: (1) it can prepare an Environmental Impact Statement ("EIS"); (2) it can prepare an Environmental Assessment ("EA"); or (3) it can invoke a Categorical Exclusion ("CE"). *Earth Island Inst.*, 2022 WL 4388197, at *11 (citing *Carlson*, 968 F.3d at 988). An EIS is the most searching review and is required for any action "significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An EA is less searching and is used to determine whether an EIS is required. 40 C.F.R. § 1508.9. A CE allows an agency to avoid preparing an EIS or EA.

1  *Carlson*, 968 F.3d at 988.  The rationale for a CE is that a project that will have only a minimal
2  impact on the environment should be allowed to proceed without an EIS or EA. *Id.* at 990; *Earth*
3  *Island Inst.*, 2022 WL 4388197, at *11.

4  "An agency's activity qualifies for a CE only if the activity falls within a listed category
5  and there are no 'extraordinary circumstances' related to the proposed action." *Earth Island*
6  *Inst.*, 2022 WL 4388197, at *11 (citing 36 C.F.R. § 220.6(a); 43 C.F.R. § 46.210; *Los Padres*
7  *ForestWatch v. United States Forest Serv.*, 25 F.4th 649, 661-62 (9th Cir. 2022); *Earth Island*
8  *Inst. v. Elliott*, 318 F. Supp. 3d 1155, 1172 (E.D. Cal. 2018)). An "extraordinary circumstance" is
9  a circumstance "in which a normally excluded action may have a significant environmental
10 effect." *Mt. Cmtys. for Fire Safety v. Elliott*, 25 F.4th 667, 680 (9th Cir. 2022) (citing 40 C.F.R. §
11 1508.4). "If an extraordinary circumstance is present, the agency nevertheless may categorically
12 exclude the proposed action if the agency determines that there are circumstances that lessen the
13 impacts or other conditions sufficient to avoid significant effects." 40 C.F.R. § 1501.4(b)(1); *see*
14 *Earth Island Inst.*, 2022 WL 4388197, at *11.

15 Here, the Complaint does not allege facts which sufficiently show a NEPA violation.
16 According to Plaintiff's own allegations, the USFS determined that neither an EIS nor EA was
17 required, invoking a CE.  Although Plaintiff alleges that the USFS improperly invoked a CE,
18 Plaintiff's allegations are conclusory at best.  Because Plaintiff's complaint fails to comply with
19 Rule 8 (discussed above), it is difficult to ascertain the factual allegations supporting Plaintiff's
20 claims.  There are no allegations in the complaint specific to the CE cited by the USFS, i.e., 36
21 C.F.R. 220.6(e)(3) involving less than 20 acres.  Rather, Plaintiff states in a conclusory fashion
22 that USFS could not invoke a CE for the permits at issue because the Under Canvas project
23 could not be built without the USFS permits.

24 The Court recognizes that under NEPA, an agency is required to prepare an EIS for
25 "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C.
26 § 4332(2)(C).  The Court further recognizes that "if a federal permit is a prerequisite for a project
27 with adverse impact on the environment, *issuance* of that permit does constitute major federal
28 action and the federal agency involved must conduct an EA and possibly an EIS before granting

it." *Ramsey v. Kantor*, 96 F.3d 434, 444 (9th Cir.1996) (emphasis added); *see also Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1089 (9th Cir. 2014).  Here, however, Plaintiff has not alleged sufficient facts to demonstrate that the special use permits were a prerequisite for the Under Canvas project.

Further, the complaint does not plausibly allege that Plaintiff personally suffered any injury of a type involving interests protected by NEPA by the granting of the Forest Road Special Use Permits.  Plaintiff does not plausibly allege that he suffered a particular direct injury in connection with the roadway permit or any arguable injury from the special use permits that falls within the "zone of interests" NEPA protects.  Plaintiff's allegations regarding any injury are conclusory.

**IV.     Conclusion and Order**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20 and fails to state a cognizable claim upon which relief may be granted.  As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his complaint to cure these deficiencies to the extent he is able to do so in good faith.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).  Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

///

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order or file a notice of voluntary dismissal; and

3. If Plaintiff fails to file an amended complaint in compliance with this order, then the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim upon which relief may be granted.

IT IS SO ORDERED.

Dated: **June 23, 2023**          /s/ *Barbara A. McAuliffe*
                              UNITED STATES MAGISTRATE JUDGE