1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MATTHEW CHAPMAN,                    Case No.  1:22-cv-01531-BAM

12              Plaintiff,               ORDER REQUIRING PLAINTIFF TO SHOW
                                         CAUSE WHY THIS ACTION SHOULD NOT
13       v.                              BE DISMISSED FOR LACK OF
                                         JURISDICTION
14   UNITED STATES FOREST SERVICE,
                                         (Doc. 5)
15              Defendant.
                                         FOURTEEN-DAY DEADLINE
16

17          Plaintiff Matthew Chapman ("Plaintiff"), proceeding *pro se* and *in forma pauperis*,

18   initiated this action pursuant to the Administrative Procedures Act ("APA") on November 29,

19   2022.  (Doc. 1.)  On June 23, 2023, the Court screened Plaintiff's complaint and granted leave to

20   amend.  (Doc. 4.)  Plaintiff filed a First Amended Complaint ("FAC") on July 24, 2023.  (Doc. 5.)

21          The Court screens complaints brought by persons proceeding *in pro se* and *in forma*

22   *pauperis*.  28 U.S.C. § 1915(e)(2).  Plaintiff's complaint, or any portion thereof, is subject to

23   dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be

24   granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28

25   U.S.C. § 1915(e)(2)(B)(ii).

26          This action "challenges United States Forest Service (USFS) Decision Memo

27   determinations relating to special use roadway permits for a commercial recreational development

28   on private land" known as Under Canvas, adjacent to Stanislaus National Forest in Tuolumne

                                          1

1   County, California.  (FAC at 7, 12, 67.)

2         Plaintiff alleges that his land in Tuolumne County is adjacent and intermingled with the

3   Stanislaus National Forest, neighboring the proposed commercial recreational development.

4   Plaintiff's land, which is across the highway from the development project, is subject to an

5   easement under the jurisdiction and management of the Defendant United States Forest Service

6   ("USFS").  The easement provides for public access to the National Forest.  (FAC ¶¶ 3, 4.)

7   Plaintiff claims that his home, which is next to the forest access easement, stands to be

8   imminently adversely affected by the actions of the USFS.  (FAC ¶ 6.)

9         According to the amended complaint, this action:

> [C]hallenges United States Forest Service (USFS) Decision Memo determinations
> relating to special use roadway permits for a commercial recreational
> development on private land, adjacent to the national forest, application of
> National Environmental Policy Act (NEPA) with respect thereto, and
> jurisdictional access matters, pertaining to a Federal-Aid funded state highway,
> compounded with representations within a land deed that the Federal-Aid
> highway was built in the wrong place.  That representation bolstered with a claim
> that excess land, had been lawfully transferred back, creating 2 parcels.  It has
> been asserted as a fraudulent claim, that the highway properly exists where it was
> built, there there was, and is no excess land to transfer, nor deed from the state as
> claimed; that the 2 parcels subject to development are not lawful parcels, there
> [sic] deed void, as a matter of law and fact.

(FAC ¶ 1.)  Plaintiff alleges that he has partaken of the announced USFS administrative scoping

regarding the matter and submitted extensive commentary.  He appears to seek review of USFS

compliance with NEPA pursuant to the Administrative Procedure Act.  (FAC ¶¶ 12-14.)

      Plaintiff explains that there are two separate commercial recreational projects that were

proposed for development.  The lands for the projects are divided by "a state Federal-Aid

highway."  (FAC ¶ 17.)  Two parcels south of the highway comprise one project and two parcels

north of the highway comprise the second project.  Plaintiff indicates that both projects propose

and require secondary access that can only be obtained through use of adjacent National Forest

System Land roadways.  The instant action involves the project to the south of the highway,

known as Under Canvas.  (FAC ¶¶ 17, 18.)

      According to Plaintiff, Under Canvas had initially been approved by the local planning

agency with a declared mitigated negative declaration pursuant to the California Environmental

Quality Act ("CEQA") without the need of a secondary access.  On the day set for approval before the local planning commission, the local planning agency cancelled the presentation and announced a full CEQA Environmental Impact Review ("EIR").  A CEQA EIR process ensured and a CEQA decision of approval resulted, which declared required "USFS road permits as a condition to project approval."  (FAC ¶¶ 19-20.)

Before, during, and after the CEQA decision, Plaintiff requested USFS involvement from Jason Kulken, Stanislaus National Forest Supervisor.  Plaintiff claimed that the USFS must involve itself, that it had jurisdictional control over the roadway proposed for required secondary access, that the project land parcels were the result of an unlawful land division and survey fraud, never having been lawfully zoned, and that any road use permit proposals were beyond the authority of the USFS to grant.  (FAC ¶ 21.)  The Forest Supervisor answered Plaintiff's concerns and asserted a lack of jurisdiction concerning the matter. (FAC ¶ 22.)

Plaintiff further alleges that the spur access proposed, presumably for the special use roadway permits, derives from a forest access road, but the "roadway" does not exist on the current Motorized Vehicle Use Map.  Plaintiff claims the Stanislaus National Forest has neglected to address occasional use of the spur access.  (FAC ¶ 31.)

According to Plaintiff, a USFS administrative scoping period was announced May 25, 2022, concerning the project's required special use roadway permits.  This scoping was to proceed with the USFS exercising jurisdiction, which the Forest Supervisor had previously denied.  Following the scoping announcement, Plaintiff resubmitted previous submittals that had been sent to Mr. Kulken, along with additional submittals.  These submittals appear to have included assertions of fraud, based on allegations that the state highway was designed, planned, and constructed as a Federal-Aid project.  (FAC ¶¶ 32-36.)  Plaintiff alleges:

> The basis of the fraud rests on a deed processed thru the Office of the County Surveyor.  That deed's legal description represents the Federal-Aid highway, as having been built in the wrong place; and a false claim of 12 acres of excess land having been properly deeded back by the State of California (no deed from the state with its legal description exists)  Those 12 acres of land, by deed description creating 2 parcels.  Those 2 parcels providing for an unlawful land division, those 2 parcels comprise the lands of the Under Canvas development.  The unlawful land division also implicates the lands to the north of the highway and the pending second proposed development.

1   (FAC ¶ 37.)  Plaintiff asserts that the fraud and false claims in his administrative submittals have

2   never been considered by their factual and legal merits.  (FAC ¶ 38.)  Plaintiff submitted relevant

3   evidence to the Federal Highway Administration and CalTrans.  (FAC ¶ 39.)

4          On September 6, 2022, CalTrans issued a determination declaring no abnormalities in the

5   right of way.  Subsequent contact with CalTrans indicated that the matter concerning the claimed

6   transfer of 12 acres of land was before the CalTrans legal department for resolution.  (FAC ¶ 40.)

7          Six days before the CalTrans determination, the USFS released a Decision Memo on

8   August 30, 2022.  The memo determined to issue the proposed three permits:  two directly and

9   the third to be delayed pending completion of the building of the development.  (FAC ¶ 41.)   The

10  Decision Memo claimed to Categorically Exclude the action from an environmental assessment

11  ("EA") or an environmental impact statement ("EIS").[1]  Plaintiff claims the "determination [was]

12  made, apparently unaware, or in disregard of the ongoing CalTrans investigation, yet to be

13  released, six days later."  (FAC ¶ 41.)  Plaintiff gave notice to the Stanislaus National Forest, to

14  be relayed to Forest Supervisor Kulken, of the intent to file a civil action and the intent to make a

15  formal criminal complaint pursuant to the Federal Land Policy Management Act.  (FAC ¶ 42.)

16         Plaintiff contends that the USFS acted in excess of its statutory authority, failed to observe

17  procedures required by law, and abused its discretion in issuing the special use permits.  As best

18  as the Court can determine from the FAC, Plaintiff is alleging claims based on the following

19  assertions:  (1) failure to consider his administrative submittals in response to the announcement

20  of USFS scoping on the matter of the special use roadway permits (FAC ¶ 47); (2) the USFS

21  improperly determined that the proposal for three permits met the established criteria for

22  acceptance (FAC ¶¶ 48, 54); (3) the Decision Memo failed to adequately evaluate the proposed

23  use for the requested cite and the necessity of the separate jurisdictional involvement of the

24  Federal Highway Administration (FHWA) and failed to provide opportunity for the FWHA and

25

26  [1] According to the Decision Memo attached to the FAC, the decision to issue the forest road special use
    permits was "categorically excluded from documentation in an environmental impact statement (EIS) or
27  an environmental assessment (EA).  The applicable category of actions is identified in agency procedures
    as 36 CFR 220.6(e)(3) Approval, modification, or continuation of special uses that require less than 20
28  acres of NFS lands."  (Doc. 5 at 68.)

its designate, CalTrans to comment (FAC ¶ 55); (4) Acting Forest Supervisor Beth Martinez recognized as lawfully existing roadway, a spur access, a forest road that does not lawfully exist pursuant to the Stanislaus National Forest Motor Vehicle Use Map (FAC ¶ 62); (6) the Decision Memo improperly determined that the permits at issue were categorically excluded from an EA and EIS analysis (FAC ¶ 65); (7) Beth Martinez, through the Decision Memo, did not act in accordance with CEQA (FAC ¶ 74); and (8) Beth Martinez, in the Decision Memo, incorrectly asserted that two entities responded to the scoping and all comments were considered in her analysis (FAC ¶ 84).

As relief, Plaintiff requests that the court (A) set aside the two permits issued by the USFS or (B) render a declaratory opinion on the limitations to USFS authority; or (C) set aside the August 30, 2022 Decision Memo and screening determination in the scoping announcement of May 25, 2022 and direct USFS to justify its conclusory determinations.  (FAC at 37-38.)

According to the Decision Memo, the Under Canvas project sought: (1) a Forest Road Special Use (Temporary) permit to provide access for construction activities during the Under Canvas construction project on road 1S09 and route FR5310; (2) a Non-Federal Commercial Road Use Permit for commercial timber hauling during the Under Canvas construction activities on Road 1S09 and Route FR5310; and (3) a Term Forest Road Special Use permit to provide for a secondary emergency egress on road 1S09 and RF5310 to be utilized only in the event of an emergency by personal and emergency vehicles.  (*Id.* at 67, Decision Memo.)  On August 30, 2022, Beth Martinez, Acting Forest Supervisor, decided to approve the proposed road uses through the issuance of a combined Forest Road Special Use (Temporary) Permit, a Non-Federal Commercial Road Use Permit, and a Term Forest Road Special Use Permit.  (*Id.* at 68.)

The Forest Road Special Use Permit was issued, with an expiration date of August 1, 2023.  (FAC at 77-80.)  That permit authorized Under Canvas "one year access within the Stanislaus National Forest for the following purposes:   Temporary access and staging for up to one year for constructions activities on road 1S09 and route FR5310."  (*Id.* at 77.)

Plaintiff has advised the Court that the purpose of temporary one year permit—to provide for development construction—has not been realized.  Plaintiff has observed that "the developers

1    have not availed themselves of the permitted access" and "upon inquiry to an individual working

2    for the developer, it was related by him . . . the involvement of FHWA/CalTrans . . .the USFS

3    permitted access, has been curtailed by FHWA/CalTrans jurisdictional authority."  (FAC at 38.)

4    Per Plaintiff, construction of the development has "apparently arrested, as no construction activity

5    has or is occurring."  (*Id.*)  Plaintiff posits that "now that the temporary permit to provide for

6    development construction is poised to expire," it should be expected that no construction will

7    occur until remedied by an application for a new, temporary permit.  (*Id.*)  However, any

8    application for a new permit was required to be submitted at least 6 months prior to expiration of

9    the Special Use Permit, i.e., 6 months prior to August 1, 2023.  (*Id.* at 79.)  Plaintiff believes that

10   Under Canvas did not avail itself of the 6-month window.  (*Id.* at 38.)  Plaintiff contends that a

11   new application may necessitate the USFS to both rescreen and reprocess the application.

12        As indicated, through this action, Plaintiff is requesting that the Court set aside two of the

13   three permits issued by USFS.  Based on Plaintiff's own statements, this relief no longer appears

14   necessary, and Plaintiff's complaint may be rendered moot because (1) no construction activities

15   on the Under Canvas project have occurred; and (2) construction of the development has, in

16   Plaintiff's own terms, "apparently arrested."  These events implicate both the Special Use Permit

17   (Temporary) and Non-Federal Commercial Road Use Permit.  Moreover, the Special Use Permit

18   (Temporary) may have expired without either its purpose being realized or the submission of a

19   timely renewal application.  Plaintiff suggests that the third contemplated permit in the Decision

20   Memo was "to be delayed pending completion of the building of the development."  (*Id.* at 19.)

21   This, too, may be a moot issue, given the status of construction and the expiration of the Special

22   Use Permit (Temporary).

23        A federal court lacks jurisdiction to decide a moot claim. *Church of Scientology v. United*

24   *States*, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority to give

25   opinions upon moot questions or abstract propositions, or to declare principles or rules of law

26   which cannot affect the matter in issue in the case before it."). "A claim is moot if it has lost its

27   character as a present, live controversy." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d

28   1118, 1123 (9th Cir. 1997) (internal citation omitted). "If an event occurs that prevents the court

1  from granting effective relief, the claim is moot and must be dismissed." *Id.* "A case or

2  controversy must exist at all stages of review . . . ." *Wolfson v. Brammer*, 616 F.3d 1045, 1053

3  (9th Cir. 2010).  A case may become moot after it is filed, "when the issues presented are no

4  longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Wolfson*, 616 F.3d

5  at 1053 (quoting *Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003)).  "If there is no longer a

6  possibility that a[ ] [plaintiff] can obtain relief for his claim, that claim is moot and must be

7  dismissed for lack of jurisdiction." *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir.

8  1999).

9       For these reasons, Plaintiff is HEREBY ORDERED to show cause by written response

10  **within fourteen (14) days from the date of service of this order** why this action should not be

11  dismissed for lack of jurisdiction because the claims are moot.   Alternatively, Plaintiff may file a

12  notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1).  <u>Plaintiff is</u>

13  <u>advised that the failure to file a timely response will result in a recommendation for dismissal of</u>

14  <u>this action</u>.

15

16  IT IS SO ORDERED.

17       Dated:   **April 24, 2024**                    /s/ *Barbara A. McAuliffe*

18                                                      UNITED STATES MAGISTRATE JUDGE

7