1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

8
9
10
11
12
13
14
15
16

| | |
|---|---|
| MATTHEW CHAPMAN, | Case No.  1:22-cv-01531-BAM |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| UNITED STATES FOREST SERVICE, | (Doc. 17) |
| Defendants. | |

17
18
19
20
21
22
23
24
25
26

Plaintiff Matthew Chapman ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, initiated this action on November 29, 2022. (Doc. 1.)  This matter is now before the Court on a motion to dismiss the First Amended Complaint ("FAC") filed by defendant United States Forest Services ("USFS" or "Defendant") on July 22, 2024. (Doc. 17.)[1]  The motion has been fully briefed and the Court has deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g).  For the reasons explained below, Defendant's motion to dismiss is GRANTED, without leave to amend as to the claims regarding the Forest Road Special Use (Temporary) Permit, the Non-Federal Commercial Road Use Permit, and the Term Forest Road Special Use Permit.  The Court GRANTS leave to amend the FAC **only** to the extent that Plaintiff

27
28

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all further proceedings in this action, including trial and entry of judgment pursuant to 28 U.S.C. 636(c)(1). (Doc. 20.)

1  is able to allege facts sufficient to state a claim regarding the supposed "fourth permit" identified

2  in his Opposition. (Doc. 27 at 3.)

3                                    **BACKGROUND**

4  **A. Procedural Background**

5        On November 29, 2022, Plaintiff Matthew Chapman, proceeding *pro se* and *in forma*

6  *pauperis*, filed an initial complaint. (Doc. 1.) On June 23, 2023, the Court screened Plaintiff's

7  complaint and, finding that the complaint failed to comply with Federal Rules of Civil Procedure

8  8, 18 and 20 and failed to state a cognizable claim upon which relief may be granted, granted

9  leave to amend. (Doc. 4.)

10       On July 24, 2023, Plaintiff filed a First Amended Complaint ("FAC"). The FAC

11  "challenges United States Forest Service (USFS) Decision Memo determinations relating to

12  special use roadway permits for a commercial recreational development." (Doc. 5 ¶ 1.) The

13  project, proposed by developer Under Canvas Inc., is located on private land adjacent to

14  Stanislaus National Forest in Tuolumne County, California (the "Under Canvas Project"). (*Id.* ¶

15  1.) On April 24, 2024, the Court screened the FAC and issued an order directing Plaintiff to show

16  cause why this action should not be dismissed for lack of jurisdiction based on mootness. (Docs.

17  4, 6.) On May 9, 2024, the Court issued an order discharging the order to show cause. (Doc. 8.)

18  On June 5, 2024, the summons was returned executed on USFS. (Doc. 11.) On July 22, 2024,

19  Defendant filed a motion to dismiss the FAC for lack of subject matter jurisdiction. (Doc. 17.)

20  The motion is fully briefed.[2]

21

22  [2] In his Opposition to Defendant's motion to dismiss (the "Opposition"), Plaintiff states that the
    Court has not responded to his requests to extend the deadline for his Opposition. (Doc. 27 at 2.)

23  The Court notes that it previously ruled on Plaintiff's first motion for administrative relief
    requesting additional time to file an opposition to Defendant's motion to dismiss. (Doc. 22.) The

24  Court directed Plaintiff to file an opposition to the motion to dismiss no later than November 4,
    2024, and ordered that any reply be filed no later than November 14, 2024. (Doc. 24.) On

25  October 21, 2024, Plaintiff filed a second motion for administrative relief requesting that the
    Court (1) direct Defendant to serve the motion to dismiss and documents via the U.S. Mail and

26  (2) adjust the briefing schedule. (Doc. 25.) On November 4, 2024, before the Court addressed
    Plaintiff's second motion for administrative relief, Plaintiff filed his Opposition. (Doc. 27.)

27  Accordingly, the Court denied Plaintiff's second motion for administrative relief as moot. (Doc.

28  28.)

After thoroughly reviewing all relevant filings and for the reasons stated below, the Court will grant the motion to dismiss without leave to amend the FAC as to the claims regarding the Forest Road Special Use (Temporary) Permit, the Non-Federal Commercial Road Use Permit, and the Term Forest Road Special Use Permit.  The Court grants leave to amend the FAC **only** to the extent that Plaintiff is able to allege facts sufficient to state a claim regarding the supposed "fourth permit" identified in his Opposition.  (Doc. 27 at 3.)

**B.  Factual Background**

*1.  The Under Canvas Project*

The FAC centers around the Under Canvas Project, a proposed recreational development located south of the intersection of Hardin Flat Road and State Highway 120 (Big Oak Flat Road) near Groveland, CA 95321 (Doc. 17-3 at 1.)  The Under Canvas Project is proposed to be developed on an 80-acre site situated on private land adjacent to Stanislaus National Forest system land.  (*Id.*)  The Under Canvas Project entails the development of a 99-unit campground that includes lodging in on-site tent structures, a mobile kitchen, and dining, reception, laundry, bathroom, and recreation facilities.  (*Id.*)  Once complete, the campground is scheduled to be open from approximately March to October.  (*Id.*)  The Under Canvas Project also includes the development of a public water system from on-site wells and a wastewater treatment system. Power will be provided by Pacific Gas & Electric ("PG&E") and supplemented with solar panel systems.  (*Id.*)

As part of the Under Canvas Project, Under Canvas Inc. submitted a proposal (the "Road Access Proposal") to the Stanislaus National Forest to utilize sections of two existing national forest system roads: Road 1S09 and Route FR5310.  (Doc. 5 at 67.)  The proposed sections of Road 1S09 and Route FR5310 together total 0.061 miles or 328 feet in length begins at the intersection of Highway 120 and ends at the National Forest boundary.  (*Id.* at 67, 71.)  Under Canvas Inc. requested three permits, which are at issue in this case, to access and use Road 1S09 and Route FR5310: (1) a Forest Road Special Use (Temporary) permit to provide access for construction activities (the "Construction Permit"), (2) a Non-Federal Commercial Road Use permit for commercial timber hauling during construction activities (the "Timber Hauling

Permit"), and (3) A Term Forest Road Special Use permit to provide for secondary emergency egress, to be utilized only in the event of an emergency by personal and emergency vehicles (the "Term Permit") (collectively, the "Forest Road Permits").  (*Id.* at 67.)  According to the Road Access Proposal, local regulations require two points of ingress and egress to and from the proposed site for emergency access.  (*Id.* at 72, 76.)  According to the Road Access Proposal, no other sites were available for sale or lease that met developer requirements.  (*Id.* at 76.)

### 2. *USFS Issues the Three Forest Road Permits*

On August 30, 2022, Beth Martinez, Acting Forest Supervisor for the Groveland Ranger District in the Stanislaus National Forest, approved the three Forest Road Permits.  (Doc. 5 at 67.)  In her Decision Memo, dated August 30, 2022, Martinez stated that she had analyzed the Road Access Proposal and determined that the issuance of the requested Forest Road Permits met the criteria outlined in Forest Service regulations.  (*Id.* at 68.)  As a part of the approval process, Martinez conducted an Environment Analysis, finding "no significant effects to forest resources with regards to the Endangered Species Act, National Historic Preservation Act, Clean Water Act, National Forest Roads and Trails Act, Clean Air Act, and the National Environmental Policy Act."  (*Id.*)  She considered documents submitted by Under Canvas Inc. concerning the development of the Under Canvas Project, as well as a Final Environmental Impact Report ("EIR") prepared for California Environmental Quality Act ("CEQA") compliance that analyzed the entire project site, including the use of Forest Service roads for emergency ingress and egress.  (*Id.*)  The EIR evaluated the Under Canvas Project for potential impacts on the environment, addressing factors including hazardous materials, traffic and transportation, utilities and service systems, and wildfire, among other factors.  (Doc. 17-3 at 16.)  The EIR concluded that the environmental impacts of the development would be "less than significant, some with mitigation, for all resource areas."  (Doc. 5 at 68.)

According to the Decision Memo, Martinez further determined that the required laws and regulations had been followed with respect to the process of a commercial property development in Tuolumne County and that the requisite permits had been acquired.  (*Id.*)  Martinez consulted with local, State, and Federal government agencies "to assure compliance with federal

transportation regulations, in response to concerns raised by a member of the public scoping." (*Id.*)  Martinez noted that the California Department of Transportation ("Caltrans"), in their original acquisition for Highway 120, acquired excess land and subsequently transferred the excess parcel to the rightful property owner once the inaccuracy was identified.  (*Id.* at 68-69.) The Decision Memo concludes that "there are no extraordinary circumstances that would warrant further analysis and documentation," that the proposed action was consistent with all applicable laws, the Stanislaus National Forest Land and Resource Management Plan (1991), and the Forest Plan Direction (2017), and that the applicant "met all permitting requirements of other federal, state and local agencies for the development of their project."  (*Id.* at 69.)  Martinez subsequently issued the three Forest Road Permits requested in Road Access Proposal.  (Doc. 5 at 68).

The permits have now expired.  The FAC provides that the Construction Permit expired July 23, 2023.  (Doc. 5 at 38.)  In his Opposition, Plaintiff acknowledges that the Construction Permit and Timber Hauling Permit have expired.  (Doc. 29 at 3.)

### 3.  *Plaintiff's Land*

Plaintiff alleges he owns land that is "adjacent and intermingled" with National Forest land, and, according to the FAC, is either "neighboring" or "across the highway" from the Under Canvas site.  (Doc. 5 ¶¶ 3, 4.)  Plaintiff also contends that his home is also "situated in close proximity" to a forest access easement, which is under the jurisdiction and management of Defendant and provides public access to the National Forest.  (*Id.* ¶ 6.)  Plaintiff further states that his land is subject to and "continuously front[s]" the National Forest easement. (*Id.* ¶ 4.)

### 4.  *Public Meetings and Opportunities to Comment*

The Road Access Proposal was listed and updated periodically on the Stanislaus National Forest Schedule of Proposed Actions on May 24, 2022.  (Doc. 5 at 69.)  At that time, letters were sent to all individuals who had previously expressed interest in the Under Canvas Project, and that all comments were considered in the analysis.  (*Id.*)

The Decision Memo contends that the decision is not subject to legal notice and comment procedures or pre-decisional administrative review process.  (*Id.*)  Regardless, several public meetings were held as a part of the process for the Under Canvas Project's approval, including a

Public Review Period from June 18, 2019 to July 18, 2019, during which the public had the opportunity to send in written comments, a Public Scoping Meeting held June 27, 2019, and a Tuolumne County Planning Commission Meeting held November 18, 2020. (Doc. 17-3; Doc. 17-6.)

On November 18, 2020, the Under Canvas Project was approved, subject to certain modifications. (Doc. 17-6.) A Special Meeting of the Board of Supervisors of the County of Tuolumne was held on December 17, 2020, during which certain individuals, including Plaintiff, presented and made comments. (Doc. 17-7 at 3.) At the December 17, 2020 Special Meeting, the EIR was certified and a Site Development Permit and Conditional Use Permit to allow the campground to be built was approved. (Doc. 17-7 at 2.) Plaintiff does not challenge either the Site Development Permit or the Conditional Use Permit.

### 5. Plaintiff Challenges the Three Forest Road Permits to Access the F509 and FR5310

According to the FAC, Plaintiff's action:

[C]hallenges United States Forest Service (USFS) Decision Memo determinations relating to special use roadway permits for a commercial recreational development on private land, adjacent to the national forest, application of National Environmental Policy Act (NEPA) with respect thereto, and jurisdictional access matters, pertaining to a Federal-Aid funded state highway, compounded with representations within a land deed that the Federal-Aid highway was built in the wrong place. That representation bolstered with a claim that excess land, had been lawfully transferred back, creating 2 parcels. It has been asserted as a fraudulent claim, that the highway properly exists where it was built, that there was, and is no excess land to transfer, nor deed from the state as claimed; that the 2 parcels subject to development are not lawful parcels, there [sic] deed void, as a matter of law and fact.

(Doc. 5 ¶ 1.)

The theory underlying the totality of Plaintiff's FAC is that the three Forest Road Permits are "beyond USFS authority to consider," "unlawful," and "should be declared void." (Doc. 29 at 4.)

### 6. Plaintiff's Administrative Efforts

Plaintiff contends that he has pursued USFS administrative procedures through other forums and now is seeking review of USFS compliance with NEPA pursuant to the

Administrative Procedure Act.  (Doc. 5 ¶ 1.)  At several points, Plaintiff communicated with Jason Kulken, Stanislaus National Forest Supervisor, and Martinez to contest the legality of the Under Canvas Project.  (*Id.* ¶¶ 21, 29, 34, 35, 42.)  Plaintiff argues that his several administrative submissions raised issues regarding the permitting process and pointed to various federal regulations that "could not be met."  (*Id.* ¶ 51.)

Plaintiff contends that he has not received satisfactory responses to his concerns through administrative forums.  (*E.g.*, *id.* ¶¶ 47-49, 61, 64-65, 73, 80, 83, 85.)  He states that his "extensive, comprehensive, and exhaustive administrative submittals" "have never been considered by their factual and legal merits" and "have continually been dismissed without any consideration."  (*Id.* ¶ 38.)  Plaintiff catalogues other criticisms of the permitting process (*e.g., id.* ¶¶ 53, 55, 59, 61, 64-65), including, among others, that Defendant (1) "did not act in accordance with the law, denying the process of NEPA otherwise applicable, the separate apllication [sic] of the Forest Service NEPA procedures, which Plaintiff was entitled to" (*id.* ¶ 72); (2) "did not act in accordance with the law, as authorized by the White House Counsel on Environmental Quality (CEQ)" and "unlawfully relied upon a CEQA EIR, prepared without USFS involvement which had not been aligned for joint CEQA/NEPA study, pursuant to CEQA guidelines and CEQ authority" (*id.* ¶ 74); (3) abused its discretion in granting the three Forest Road Permits (*id.* ¶ 84), and that (4) Defendant's determinations were "conclusory," "without any jutifications [sic]"and that "there is no demonstrated factual basis" supporting the assertion that all comments were considered in Defendant's analysis (*id.* ¶ 85).

**C.  Request for Judicial Notice**

Defendant asks the Court to take judicial notice of several documents (Doc. 17-2): a Notice of Preparation (NOP) of the Draft Environmental Impact Report (EIR) for the Under Canvas Project, dated June 18, 2019 ("Exhibit 1"); excerpts from the Draft Environmental Impact Report for the Yosemite Under Canvas Project, dated June 2020 ("Exhibit 2"); excerpts from the Final Environmental Impact Report for the Yosemite Under Canvas Project, dated November 2020 ("Exhibit 3"); excerpts from the Tuolumne County Planning Commission Meeting Minutes, dated November 18, 2020 ("Exhibit 4"); and the Tuolumne County Board of Supervisors Special

Meeting Minutes, dated December 17, 2020 ("Exhibit 5").

Exhibits 1-5 are public records from the administrative review and approval process for the Under Canvas Project. A court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts may "take judicial notice of undisputed matters of public record, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Here, all of Defendant's exhibits are in the public record, and their existence is not subject to reasonable dispute. Fed. R. Evid. 201(b); *Vargas v. Wells Fargo Bank, N.A.,* 2012 WL 2931220, *7 (N.D. Cal. July 18, 2012).

Accordingly, Defendant's request for judicial notice is granted. Furthermore, the Court will consider documents attached to Plaintiff's FAC. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) ("In reviewing the sufficiency of a complaint, we limit ourselves to the complaint itself and its attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice.") The Court takes judicial notice of these documents and their existence, but not the truth of the allegations contained therein.

## **LEGAL STANDARD**

The Constitution confers limited authority to the federal courts. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). A litigant seeking to bring a lawsuit in federal court must establish that he is bringing a "case or controversy" under Article III of the U.S. Constitution. *Spokeo*, 578 U.S. at 338. The plaintiff must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.

Under Federal Rule of Civil Procedure 12(b)(1), a party may assert a defense that a court lacks subject-matter jurisdiction to hear a case. Fed. R. Civ. P. 12(b)(1). "'The party invoking federal jurisdiction bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of

proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561. Furthermore, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

**<u>DISCUSSION</u>**

In the pending motion to dismiss, Defendant contends that Plaintiff's lawsuit does not present a "case" or "controversy" sufficient to establish federal subject-matter jurisdiction under Art. III, § 2 because (1) the Construction and Timber Hauling Permits have both expired and the activities they authorized are complete, (2) Plaintiff fails to allege specific facts showing that he will sustain any concrete, particularized, and actual or imminent harm from the "exceedingly limited and remote use of the agency's road" authorized by the Term Permit, (3) Plaintiff fails to identify any harms that stem from the campsite's existence or operations near his property, and (4) Plaintiff fails to show that any decision from the Court is likely to prevent any harms. (Doc. 17 at 1.)

Because federal courts must determine that they have jurisdiction before proceeding to the merits, *Lance v. Coffman*, 549 U.S. 437, 439 (2007), the Court will limit its discussion to jurisdiction and will not decide the merits of Plaintiff's argument here. "A suit brought by a plaintiff without Article III standing is not a case or controversy, and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (internal quotation marks omitted). Furthermore, Defendant brings a facial attack on jurisdiction, asserting only that the allegations contained in the FAC are "insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

1   (9th Cir. 2004).  The Court does not decide the merits of Plaintiff's substantive argument at this

2   time.  The Court instead assumes Plaintiff's allegations to be true and draws all reasonable

3   inferences in his favor, as it is required to do, and construes the FAC liberally because it was

4   drafted by a *pro se* plaintiff.  *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987).

5          Because the Court finds that Plaintiff's request for relief that the Court "set aside the 2

6   permits having been issued by the USFS" to be moot (Doc. 5 at 37) and, independently, because

7   the FAC fails to establish standing, the suit must be dismissed under Rule 12(b)(1).  *Cetacean*

8   *Cmty*, 386 F.3d at 1174.

9      **A.  Mootness**

10          "Federal courts lack jurisdiction to decide moot cases because their constitutional

11   authority extends only to actual cases or controversies."  *Iron Arrow Honor Soc'y v. Heckler*, 464

12   U.S. 67, 70 (1983).  "A foundational principle of Article III is that 'an actual controversy must

13   exist not only at the time the complaint is filed, but through all stages of the litigation.'"  *Trump v.*

14   *New York*, 592 U.S. 125, 131 (2020).

15          Defendant argues that Plaintiff's challenges to the Construction Permit and Timber

16   Hauling Permit issued are moot because "the work associated with those permits is complete."[3]

17   (Doc. 17 at 5.)  Plaintiff responds by arguing that his challenges are not moot.  He acknowledges

18   that the "**three** temporary permits, authorizing construction and timber hauling although having

19   expired, have been supplanted by a term permit, subject to the same regulatory limitations

20   applicable to the expired temporary permits.  By and through the **viable term** permit **(the fourth**

21   **permit)** the common regulatory limitations are not moot."  (Doc. 29 at 3) (original emphasis).

22   Plaintiff further contends in that this previously unalleged fourth permit "enables the project to

23   exist, as without the federal permit the subject lands cannot provide the secondary access required

24   _____

25   [3] When ruling on a Rule 12(b)(6) motion to dismiss, the Court takes as true the well-pleaded facts
    in the FAC and does not consider evidence beyond the pleadings.  *Stanley v. City of Sanford,*

26   *Fla.*, 145 S. Ct. 2058, 2062 (2025).  As discussed above, the Court may also take judicial notice
    of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). The Court does not take

27   judicial notice of the declarations attached to Defendant's motion to dismiss.  *U.S. v. Ritchie*, 342
    F.3d 903, 909 (9th Cir. 2003).

28

1      as a condition of project approval."  (*Id.* at 3.)

2          A case is moot "when the issues presented are no longer 'live' or the parties lack a legally

3      cognizable interest in the outcome."  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).  "The

4      underlying concern is that, when the challenged conduct ceases such that there is no reasonable

5      expectation that the wrong will be repeated, then it becomes impossible for the court to grant any

6      effectual relief whatever to the prevailing party," rendering the opinion advisory.  *Pap's A.M.*,

7      529 U.S. at 287 (internal citations and quotation marks omitted).  Because mootness is

8      jurisdictional, a case must be dismissed as moot where a court "cannot grant any effectual relief

9      whatever" in favor of the plaintiff.  *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (internal

10      citation and quotation marks omitted).

11         Here, Plaintiff fails to allege how claims for setting aside the Construction Permit and

12      Timber Hauling Permit are not moot.  The Court cannot redress any alleged injuries or harms that

13      could be related to Plaintiff's challenges to the issuances of these permits.  "A federal court does

14      not have jurisdiction 'to give opinions upon moot questions or abstract propositions, or to declare

15      principles or rules of law which cannot affect the matter in issue in the case before it.'"  *Am.*

16      *Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997), *as amended* (Sept.

17      16, 1997) (quoting *Church of Scientology v. U.S.*, 506 U.S. 9, 12 (1992)).

18         To the extent that Plaintiff argues in his Opposition (*e.g.*, Doc. 27 at 7) that the issues

19      here fall into the limited exception for government actions that are "capable of repetition, yet

20      evading review," the Court disagrees.  *Alaska Fish & Wildlife Fed'n & Outdoor Council, Inc. v.*

21      *Dunkle*, 829 F.2d 933, 939 (9th Cir. 1987).  The Ninth Circuit has held that such "doctrine is

22      limited to extraordinary cases in which: (1) the duration of the challenged action is too short to be

23      fully litigated before it ceases; and (2) there is a reasonable expectation that the plaintiffs will be

24      subjected to the same action again."  *Am. Rivers*, 126 F.3d at 1124.

25         Neither factor applies here.  As alleged by Plaintiff, he has been offered—and participated

26      in—several meaningful opportunities for comment over the span of several years.  (*E.g.*, Doc. 5 at

27      21 (the Plaintiff "forwarded extensive, comprehensive, and numerous CEQA administrative

28      scoping documents to the Stanislaus National Forest Supervisor"); *id.* at 40-47 (letter from

Plaintiff to Kuiken, dated March 29, 2021); *id.* at 48 (letter from Plaintiff to Forest Supervisor, dated June 7, 2022); *id.* at 50 (letter from Plaintiff to Forest Supervisor, dated June 13, 2022); *id.* at 53 (letter from Plaintiff to Forest Supervisor, dated June 23, 2022); *id.* at 55-57 (letter from Plaintiff to U.S. Department of Transportation, dated July 11, 2022); *id.* at 64-65 (letter from Caltrans to Plaintiff, dated September 6, 2022).  Plaintiff has offered no facts showing that the duration of the challenged action is too short to be fully litigated before it ceases, or that there is reasonable expectation that Plaintiff will be subjected to the same action again.

To the extent that Plaintiff's claims request relief regarding the Construction and Timber Hauling Permits issued by Defendant, such claims are dismissed with prejudice as moot.

For the first time, Plaintiff raises in his opposition that he is challenging "the fourth permit."  This fourth permit is not clearly alleged in the FAC, but may be referenced.  The Court should "freely" give leave to amend "when justice so requires," Fed. R. Civ. P. 15(a), but may only consider allegations contained within Plaintiff's operative pleading on a motion to dismiss. *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Johnson v. Kuersten*, 2025 WL 253939, at *7 (E.D. Cal. Jan. 21, 2025), *report and recommendation adopted*, 2025 WL 1002264 (E.D. Cal. Apr. 3, 2025) (despite proceeding *pro se*, "plaintiff may not add new material in his opposition in an effort to defeat defendant's motion to dismiss.")

Plaintiff appears to refer to an unnamed permit in his Prayer for Relief.  (Doc. 5 at 37-38.) In an abundance of caution, the Court grants leave to amend the FAC only to the extent that Plaintiff is able to allege facts sufficient to state a claim regarding the supposed "fourth permit" identified in his Opposition (Doc. 27 at 3) and alluded to in his FAC.  (Doc. 5 at 37-38.)

**B. Article III Standing**

   ***i.    Injury in Fact***

Even if the Court did not to dismiss the claims regarding the Construction Permit and Timber Hauling Permit on the basis of mootness, all claims should be dismissed because Plaintiff lacks Article III standing to bring such claims.

Injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338 (internal quotation marks omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo*, 578 U.S. at 340 (internal quotation marks omitted). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 650, n.1); *Lujan*, 504 U.S. at 563 (injury in fact "requires that the party seeking review be himself among the injured." (quoting *Sierra Club v. Morton,* 405 U.S. 727, 734-35 (1972)); *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (plaintiff must "show that he personally has suffered some actual or threatened injury").

Defendant argues that Plaintiff fails to satisfy the injury-in-fact requirement for standing under Article III to challenge the Term Permit. (Doc. 17 at 5-7.) Defendant contends that Plaintiff fails to allege "how the Forest Service's permit allowing secondary egress—only in the event of an emergency—causes any harm to him that is concrete, particularized, and actual or imminent." (*Id.* at 6.)

In response, Plaintiff asserts that he, "as a Landowner falling within land designated as Non-National Forest System Lands, subject to a USFS easement through his lands, under the jurisdiction and management of the USFS, has a legally protected interest that the Federal Regulation of the USFS be lawfully administered, as they affect this Plaintiff in a personal and individual way." (Doc. 29 at 7.) Plaintiff further argues that he has standing "as an active participant in the administrative process." (*Id.* at 4.)

The FAC does not allege that Plaintiff is suffering a concrete injury, or that Plaintiff specifically was injured by Defendant approving the three challenged Forest Road Permits at issue. As best as the Court can surmise, Plaintiff asserts three partially overlapping categories of allegations connecting him to the three Forest Road Permits. First, Plaintiff alleges that the land division, zoning, and survey process for the Forest Road Permits were beyond the authority of

Defendant to grant. (*E.g.,* Doc. 5 ¶ 1 (that a "Federal-Aid funded state highway" "was built in the wrong place" and "had been lawfully transferred back, creating 2 parcels"); *id.* ¶ 21 (that "USFS had jurisdictional control over the very roadways being proposed for required secondary access, that the projects land parcels [sic] the result of an unlawful land division and survey fraud, never having been lawfully zoned, that any road use permit proposals were beyond the authority of the USFS to grant.")). Second, Plaintiff asserts that his land is near both the National Forest and the Under Canvas Project site and "stands to be imminently adversely affected, by and thru [sic] unlawful, unauthorized excess' [sic] of limitation of authority, without observance of procedures of law, unwarranted by the facts, arbitrary and capricious acts, abuses of discretion." (*Id.* ¶ 6; *see also id.* ¶ 3 (his land is "adjacent and intermingled with the National Forest" and "neighboring the proposed commercial recreational development for which the USFS action is to enable development"); *id.* ¶ 4 (his land is "across the highway from the development project"); *id.* (his land is "subject to an easement, under jurisdiction and management of the USFS" which "provides for public access to the National Forest."); Doc. 29 at 4 (Plaintiff is a "designated Non-National Forest System land's, [sic] land owner")). Third, Plaintiff argues that he participated in the administrative process, having "forwarded extensive, comprehensive, and numerous CEQA administrative scoping documents to the Stanislaus National Forest Supervisor, Jason Kuiken, expecting and requesting National Forest involvement," (Doc. 5 ¶ 21 (original emphasis omitted)), but did not receive satisfactory responses (*e.g., id.* ¶¶ 25-27, 33-34), despite having spent significant time and energy lodging complaints with the relevant authorities (*id.* ¶¶ 29, 34-35.)

None of these categories of allegations constitute a concrete and particularized injury that affects Plaintiff personally. A plaintiff must show that the injury is "real, and not abstract." *Spokeo*, 578 U.S. at 340; *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("deprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.") A plaintiff must also allege sufficient facts to show that a harm will be suffered by him personally that is not "plainly undifferentiated and common to all members of the public." *Lance v. Coffman*, 549 U.S. 437, 440 (2007) (internal quotation

1  marks and citation omitted).  Plaintiff has not done so here.  The Court will consider each

2  category of Plaintiff's allegations in turn.

3      First, Plaintiff argues that he has "seen the USFS continually, and consistently act in

4  disregard of the statutory and regulatory limitations on their authority, continually disregarding

5  General Regulation with apparent, actual impunity, because they know they cannot be held

6  accountable." (Doc. 29 at 7.)  Federal courts "have consistently held that a plaintiff raising only a

7  generally available grievance about government—claiming only harm to his and every citizen's

8  interest in proper application of the Constitution and laws, and seeking relief that no more directly

9  and tangibly benefits him than it does the public at large—does not state an Article III case or

10 controversy." *Lance v. Coffman*, 549 U.S. 437, 439 (2007).  A citizen's interest in the lawful

11 administration of regulations cannot be a basis by which to establish standing, as the federal

12 courts are not the Constitutionally appropriate forum in which to air generalized grievances. (*Id.*)

13 The core injury that Plaintiff seems to allege is that the law—specifically, various USFS

14 regulations—has not been followed.  Such an injury is "precisely the kind of undifferentiated,

15 generalized grievance about the conduct of government that we have refused to countenance in

16 the past." *Lance*, 549 U.S. at 442.

17     Further, a plaintiff does not have standing to challenge a government regulation "simply

18 because the plaintiff believes that the government is acting illegally." *Food & Drug Admin. v.*

19 *All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (internal citation omitted); *Valley Forge*

20 *Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 473

21 (1982) (federal courts are not "publicly funded forums for the ventilation of public grievances.");

22 *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("although a suitor may derive

23 great comfort and joy from the fact that . . . the Nation's laws are faithfully enforced, that psychic

24 satisfaction is not an acceptable Article III remedy because it does not redress a cognizable

25 Article III injury.")  Nor does a plaintiff have standing simply because his "legal objection is

26 accompanied by a strong moral, ideological, or policy objection to a government action." *Food &*

27 *Drug Admin.* 602 U.S. at 381.  And it is not sufficient to allege that if Plaintiff does not have

28 standing to sue, as Plaintiff does in his Opposition (Doc. 29 at 6), then no one would have

1    standing.  *Thole v. U. S. Bank N.A*, 590 U.S. 538, 544–45 (2020).

2         Next, as to the second category of allegations, Plaintiff's status as a landowner near the

3    Under Canvas Project site, the allegation that his land "stands to be imminently adversely

4    affected" by Defendant's acts (Doc. 5 at ⁋ 6), and the fact that his land is subject to a USFS

5    easement is not sufficient to confer standing on Plaintiff.  Plaintiff's status as a landowner, in and

6    of itself, does not confer standing to bring claims against Defendant.  A plaintiff must still allege

7    injuries that are "sufficiently concrete" for Article III purposes.  *Weyerhaeuser Co. v. U.S. Fish &*

8    *Wildlife Serv.*, 586 U.S. 9, 19 n.1 (2018); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021)

9    (explaining that a lawsuit may proceed where "the plaintiff has suffered concrete harm to her

10   property" but not where "plaintiff has not suffered any physical, monetary, or cognizable

11   intangible harm traditionally recognized as providing a basis for a lawsuit in American courts.")

12        Similarly, Plaintiff's conclusory allegation that his land "stands to be imminently

13   adversely affected" is not sufficiently "concrete" to satisfy the injury-in-fact prong.  *Covington v.*

14   *Jefferson Cnty*., 358 F.3d 626, 638 (9th Cir. 2004) (finding that Plaintiffs had standing to

15   challenge a landfill near their property after having alleged a sufficiently "concrete risk of harm"

16   to Plaintiffs, including the presence of fires, excessive animals, insects and scavengers attracted to

17   uncovered garbage, groundwater contamination, and improper disposal of biological substances);

18   *Weyerhaeuser Co.*, 586 U.S. at 19 n.1 (finding that landowners pled a sufficiently concrete injury

19   and had standing to challenge a U.S. Fish and Wildlife Service critical habitat designation that

20   would deprive the owners of the land's substantial development value).  Conclusory allegations,

21   such as Plaintiff's bare allegation that his land "stands to be imminently adversely affected," are

22   insufficient to establish standing.  C*arrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1006

23   (9th Cir. 2011).  The easement cited by Plaintiff is unrelated to this litigation and the mere fact

24   that a Forest Service easement exists on his property does not provide a basis for jurisdiction,

25   absent nonconclusory allegations of concrete harm from the challenged USFS actions.

26        Finally, Plaintiff details his extensive administrative submissions, including, but not

27   limited to, allegations that he has partaken of the announced USFS administrative scoping period

28   concerning the Forest Road Permits (Doc. 5 ⁋ 7), that the fraud and false claims pointed to in his

administrative submissions have never been considered on their factual and legal merits (*id.* ¶¶
21, 36), and that various state agencies failed to address his comments in a meaningful way (*id.* ¶¶
29, 34, 35).  These allegations do not satisfy Article III's injury-in-fact requirement.  Wasted
effort and frustration alone are insufficient to establish standing. *See Manzanarez v. Madera
Collection Servs.*, 722 F. Supp. 3d 1074, 1080 (E.D. Cal. 2024) (noting that to satisfy Article III's
injury-in-fact test, "loss of personal time must be tied to a more concrete injury.")

Nor does Plaintiff allege that any harm is "actual or imminent."  *Lujan*, 504 U.S. at 564.
"Imminence" means that a "threatened injury must be certainly impending to constitute injury in
fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks and citation
omitted).  The FAC contains no facts showing how the Forest Road Permits will produce any
"certainly impending" concrete and particularized injury to Plaintiff.  There are no concrete facts
alleged that Plaintiff or Plaintiff's land have been affected at all.  And Plaintiff does not know if
or how he will be affected in the future.  *City of Los Angeles v. Lyons, 461 U.S. 95*, 108 (1983).

As several points, Plaintiff alleges that jurisdiction exists or that the issue has already been
settled.  (Doc. 29 at 6-8.)  Plaintiff asserts that the Court has already considered, in screening this
matter, "the issues related to the points and authority related to subject matter jurisdiction,
standing, and mootness," (Doc. 29 at 6), and points to the Court's Order to Show Cause (Doc. 6)
and the subsequent Order Discharging Order to Show Cause (Doc. 8) to argue that "the Court has
already addressed the matters of the legal standard, through screening afforded pro se, and in
forma pauperis standing pursuant to 28 U.S.C. § 1916(e)(2)."  (Doc. 29 at 6.)

The Court is required to screen complaints brought by persons proceeding *pro se* and *in
forma pauperis*.  28 U.S.C. § 1915(e)(2).  A complaint, or any portion thereof, is subject to
dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be
granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28
U.S.C. § 1915(e)(2)(B)(ii).  The Court's Screening Order does not constitute a definitive decision
on subject matter jurisdiction or standing.  A jurisdictional defect may be raised at any time.
*Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S. Ct. 1197, 1202 (2011).
Furthermore, the Court does not give weight to Plaintiff's conclusory allegations that jurisdiction

1    already exists or has already been settled by the Court.  *Carrico*, 656 F.3d at 1006 ("This

2    conclusory allegation is insufficient to establish standing.")

3            A litigant "must clearly and specifically set forth facts sufficient to satisfy [ ] Art. III

4    standing requirements."  *Whitmore*, 495 U.S. at 155.  The Court may not "create its

5    own jurisdiction by embellishing otherwise deficient allegations of standing."  *Id.* at 155-56.

6    Despite being granted leave to amend, (Doc. 4), Plaintiff has again failed to set forth specific facts

7    demonstrating an injury-in-fact.  In the Court's order screening the initial complaint, Plaintiff was

8    informed that the initial complaint "does not plausibly allege that Plaintiff personally suffered any

9    injury of a type involving interests protected by NEPA by the granting of the Forest Road Special

10   Use Permits," "does not plausibly allege that he suffered a particular direct injury in connection

11   with the roadway permit or any arguable injury from the special use permits that falls within the

12   'zone of interests' NEPA protects", and that "Plaintiff's allegations regarding any injury are

13   conclusory."  (Doc. 4 at 11.)

14           Plaintiff's allegations that Defendant acted outside of the scope of its authority, that he is a

15   landowner near the Under Canvas Project site and subject to a USFS easement, or that his

16   administrative submissions were not adequately addressed are not sufficient to show that he

17   suffered "an invasion of a legally protected interest" that is "concrete and particularized" and

18   "actual or imminent, not conjectural or hypothetical."  *Spokeo*, 578 U.S. at 338.  Accordingly,

19   Plaintiff has failed to establish the injury-in-fact element of Article III standing.

20                   ***ii.    Fairly Traceable to the Challenged Conduct of the Defendant***

21           Standing analysis requires that "there must be a causal connection between the injury and

22   the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of

23   the defendant, and not . . . th[e] result [of] the independent action of some third party not before

24   the court." *Lujan*, 504 U.S. at 560 (internal quotation marks and citation omitted). "[P]laintiffs

25   must establish a 'line of causation' between [defendant's] action and their alleged harm that is

26   more than 'attenuated.'" *Maya*, 658 F.3d at 1070 (citing *Allen v. Wright,* 468 U.S. 737, 757

27   (1984)).

28           Plaintiff is challenging Defendant's issuance of the three Forest Road Permits that

18

authorize Under Canvas Inc. to use existing national forest system roads for temporary access for construction and timber hauling, and long-term use as an emergency egress route.  Even if the Court were to assume that the injuries identified above were adequately pled for injury-in-fact purposes, Plaintiff fails to show how he would suffer any cognizable injury that would be fairly traceable to Defendant's approval of the Forest Road Permits.  Plaintiff argues that "[b]ut for the Federal USFS Special Use roadway permits, the commercial recreational developments cannot be built."  (Doc. 5 ¶ 30.)  Even taking "all allegations and reasonable inferences" as true and construing the FAC "in the light most favorable to the non-moving party," this speculative and conclusory assertion is insufficient to defeat a motion to dismiss.  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."); *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013) ("where the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, . . . the causal chain is too weak to support standing.")  Any "speculative chain of possibilities" is insufficient to establish that any harm is "fairly traceable" to the Forest Road Permits. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

Plaintiff has not shown that he has suffered any injury that is fairly traceable to the challenged conduct of Defendant.

### iii.    *Redressability*

A party seeking to establish standing must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted).  Plaintiff asks that the Court "set aside the the the [sic] 2 permits having been issued by the USFS, and although not addressed within the Decision Memo, the USFS expressed intent to issue a third long term permit after completion of the construction of the development project," "render a declaratory opinion of the plain meaning of the limitations to USFS authority, expressed by and thru [sic] 36 CFR §251.53(l)(6); its force and affect, and ramification acting in disregarding its plain meaning," "set aside the whole of whole of [sic] the USFS Decision Memo of August 30, 2022, as well as the USFS screening determination

set forth in the Scoping announcement of May 25, 2022," and "direct the USFS, to fully justify the conclusory determinations, as alleged within Claims 1-8, with due regard to the Regulatory criteria asserted within Claims 1-8."  (Doc. 5 at 37-38.)

Defendant contends that "[i]f this Court were to vacate the Forest Service's permit for secondary emergency egress, it would be wholly speculative to guess how Tuolumne County and Under Canvas might respond, or to presume that any concrete, particularized injury to Plaintiff would be avoided by the Court's decision."  (Doc. 17 at 9.)  Plaintiff responds by arguing that he has "seen the USFS continually, and consistently act in disregard of the statutory and regulatory limitations on their authority, continually disregarding Federal Regulation with apparent, actual impunity, because they know they cannot be held accountable. That the U.S. Attorney will defend them, rather than enforce the Laws of the United States, enacted by the people of the United States."  (Doc. 17 at 7.)  Plaintiff further argues that the deadline to approve the Forest Road Permits "has not long passed. Never ripe, for lack of the federal permit, integral to the CEQA determination, and a requirement of project approval."  (*Id.*)

The Court agrees with Defendant that Plaintiff fails to satisfy this prong for many of the same reasons that he fails to meet the traceability requirement.  Because USFS is the only named defendant, the Court could accord relief only against the USFS and not against Under Canvas or another other entity.  But Plaintiff fails to allege how setting aside the three Forest Road Permits would remedy any alleged injuries.  And Plaintiff's apparent request for a declaratory judgment "of the plain meaning of the limitations to Defendant's authority expressed by and thru [sic] 36 C.F.R. § 251.53(l)(6)" and an order that Defendant "fully justify the conclusory determinations" regarding the Forest Road Permits (*id.*), still requires Plaintiff to meet the constitutionally minimum elements of Article III standing.  *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1023 (9th Cir.) (standing requirements are "not relaxed in the declaratory judgment context" and the plaintiff must still "have a personal stake in the outcome of each claim . . . and for each form of relief that is sought." (internal citations and quotation marks omitted)).

The case or controversy limitation of Article III requires the Court to act "only to redress

injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976).  Plaintiff's requested relief cannot redress any alleged injury, and as such, Plaintiff has not established the redressability element of the standing test. *Steel Co.*, 523 U.S. at 107 ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.")

**C. Leave to Amend**

  **i.**   ***Leave to Amend is Denied as to the Three Forest Road Permits***

  "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed" to amend his complaint to cure its deficiencies, "the district court's discretion to deny leave to amend is particularly broad." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020).  "In assessing whether leave to amend is proper, courts consider the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment. *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814–15 (9th Cir. 2020) (internal quotation marks and citation omitted).

  Given that the Court has previously granted Plaintiff an opportunity to amend his Complaint to show how he has adequately suffered a concrete and particularized injury, (Doc. 4), and that Plaintiff has failed to cure the deficiencies, the Court will not grant further leave to amend.

  **ii.**   ***Leave to Amend is Granted as to the Purported Fourth Permit***

  As Plaintiff appears to refer to an unnamed permit in his Prayer for Relief, (Doc. 5 at 37-38), and in an abundance of caution, the Court grants leave to amend the FAC only to the extent that Plaintiff is able to allege facts sufficient to state a claim regarding the supposed "fourth permit" identified in his Opposition (Doc. 27 at 3) and alluded to in his FAC.  (Doc. 5 at 37-38.)

  Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations must

be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly,* 550 U.S. at 555 (citations omitted).  ).  Any amended complaint shall be **limited to Plaintiff's claim regarding the "fourth permit."  If an amended complaint contains allegations regarding any other claim, such claims will be disregarded or stricken.**

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.,* 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

## **CONCLUSION**

1.  For the reasons explained above: Defendant's motion to dismiss the First Amended Complaint (Doc. 17) is GRANTED WITH LEAVE TO AMEND **only** to the extent that Plaintiff is able to allege facts sufficient to state a claim regarding the supposed "fourth permit" identified in his Opposition. (Doc. 27 at 3.)

2.  Within twenty-one (21) days from the date of service of this Order, Plaintiff may file a Second Amended Complaint that relates only to facts regarding the supposed "fourth permit" identified in Plaintiff's Opposition.  (Doc. 27 at 3.)  Plaintiff is otherwise directed to file a notice of dismissal within twenty-one (21) days from the date of service of this Order.  Failure to timely file either document will result in dismissal of this case with prejudice pursuant to Rule 41(b) for failure to comply with a Court order and failure to state a claim.

IT IS SO ORDERED.

Dated:   __July 28, 2025__              ____ /s/ *Barbara A. McAuliffe* ____
                                         UNITED STATES MAGISTRATE JUDGE